# Minutes of Proceedings

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------------x

Date: April 2, 2008               :

---------------------------------------------------------------------------------x

In re:                      :

Worldcom, Inc., et al.,            :

           Reorganized Debtors.   :   Case No.

                    :   02-13533 (AJG)

---------------------------------------------------------------------------------x

                    :

The Langston Law Firm, PA, Joseph C. Langston, and :

Timothy R. Balducci,          :

                    :   Adv. Pro. No.

             Plaintiffs,   :   07- 02044 (AJG)

         -v -          :

                    :

The State of Mississippi, Stacey Pickering, in his capacity :

as Auditor for the State of Mississippi, and Phil Bryant, in :

his capacity as former Auditor for the State of Mississippi, :

                    :

             Defendants.   :

---------------------------------------------------------------------------------x


Present: <u>Hon. Arthur J. Gonzalez</u>   _____   ___ECRO_____

    Bankruptcy Judge      Courtroom Deputy    Court Reporter


Plaintiffs, by counsel

Defendants, by counsel

**Proceeding:**  Plaintiffs' Summary Judgment Motion and Defendants' Abstention Motion


**Order:**   For the reasons set forth in the opinion attached hereto as Exhibit "A", the Court grants
      the Defendants' Abstention Motion and does not address any other matter.


   FOR THE COURT: Kathleen Farrell, Clerk of the Court

   BY THE COURT:

   <u>**s/Arthur J. Gonzalez**_____</u>   <u>04/02/2008</u>   <u>Jacqueline De Pierola</u>

   United States Bankruptcy Judge    Date     Courtroom Deputy

EXHIBIT "A"

Before the Court are two motions.  The first is a motion for summary judgment

(the "Summary Judgment Motion") filed by the Langston Law Firm, P.A., Joseph C.

Langston and Timothy Balducci (collectively, the "Langston Firm") with respect to

certain claims alleged in an adversary proceeding (the "Adversary Proceeding") instituted

in the WorldCom (the "Debtors") bankruptcy case against the State of Mississippi (the

"State"), Stacey Pickering in his capacity as Auditor for the State and Phil Bryant in his

capacity as former Auditor for the State (together with Stacey Pickering, the "Auditor").

The Langston Firm seeks a declaration that the Auditor is barred, under principles of res

judicata, estoppel and waiver, from suing the Langston Firm to recover $14 million in

legal fees it was paid on behalf of the State in connection with a settlement agreement

(the "Settlement Agreement") entered into between the State and the Debtors.[1]

The second motion is the Auditor's request that the Court abstain from hearing

and determining the Adversary Proceeding pursuant to 28 U.S.C. §1334 (c)(1) and (2)

(the "Abstention Motion").  The Auditor asserts that the Adversary Proceeding is a non-

core proceeding between non-debtor parties, presents no issues of bankruptcy law, the

outcome of which will have no impact on the Debtors or the bankruptcy case.  The

Auditor has commenced an action in Mississippi state court (the "State Court Action")

alleging that the manner in which the Langston Firm was paid for the services it rendered

---

[1] The Langston Firm asserted additional claims for relief in the Adversary Proceeding which are not part of the Summary Judgment Motion.  The Auditor asserted a counterclaim seeking, in the event the Abstention Motion is denied, a declaration that the Langston Firm illegally received public funds in violation of Mississippi law and must return such funds to the State.

1

to the State Tax Commission in the bankruptcy case violated Mississippi law.  According

to the Auditor, Mississippi law requires that "public funds" be spent pursuant to a vote of

the legislature and that lawyers representing the State be paid "out of the Attorney

General's contingent fund, or any other funds appropriated to the Attorney General's

Office."  Miss. Code Ann. 7-5-7.  The Auditor contends that the settlement payment

received by the State under the Settlement Agreement, including the $14 million paid to

the Langston Firm, comprised public funds and that the Langston Firm must return the

$14 million to the State for legislative approval and appropriation.[2]

The Settlement Agreement:

The Settlement Agreement was entered into on May 6, 2005 between the Debtors

and the State and settled proofs of claim for approximately $1 billion in taxes that the

State had filed against the Debtors.  The Court approved the Settlement Agreement on

May 13, 2005 (the "Settlement Order").  Section 8 of the Settlement Agreement

provided, in relevant part:

8.    Settlement Payment and Releases.  In consideration of the release
from the State and the other terms of this Agreement, and in full and complete
satisfaction of the Additional Claims, [the Reorganized Debtors] will pay the
following amounts and transfer the following property as payments of tax and
interest, to or **on behalf of** the State:

(i)    [$100,000,000] to the State;

(ii)    [$14,000,000] in counsel fees and costs to [the Langston Firm], . . . acting
as Special Assistant Attorneys General for the State;

---

[2] The Langston Firm removed the State Court Action to the U.S. District Court for the Southern District of
Mississippi and then sought to transfer it to the Court.  The Auditor filed a motion to remand the case to
state court.  After hearing the remand motion, U.S. District Court Judge Wingate indicated in a conference
that he would deny the transfer request and grant the remand.  The Langston Firm requested that Judge
Wingate not issue his ruling until the Court has ruled on the instant motions.  To date, no order has been
entered by Judge Wingate in that matter.

(iii)    [$4,200,000] to the Children's Justice Center of Mississippi; and

(iv)    The WorldCom real property described on Exhibit C hereto.

Settlement Agreement, 8(i) – (iv) (emphasis added).

The Debtors fully complied with the payment provisions of the Settlement Agreement and the Debtors' liability to the State is therefore concluded. The Langston Firm asserts that in attempting to recover the $14 million payment the Auditor is collaterally attacking the Settlement Order. The Court disagrees. The Auditor's dispute over whether the former Attorney General exceeded his authority in designating and allocating the settlement proceed payments made on behalf of the State is not an attack on the Settlement Order. These issues were not before the Court in connection with approving the settlement of the Debtors' tax obligations to the State nor could they have been raised. These issues are unique to Mississippi, non-debtor parties and are unrelated to the Debtors' settlement with the State. Had the Auditor raised this dispute in connection with the Court's approval of the Settlement Agreement, the Auditor would have lacked standing for it was the Attorney General that represented the interests of the State before the Court. Any dispute raised regarding the Attorney General's authority may have postponed the Court's consideration of the Settlement Agreement to await a resolution of the matter in a Mississippi court or, some other action may have been taken to allow the settlement to proceed without such resolution. However, in either case, the Court would not have had jurisdiction over the dispute. Therefore, regardless of one's view as to the breadth of the Settlement Order's retention of jurisdiction provision (Settlement Order 2), the Court could not have retained jurisdiction over issues it never had jurisdiction over in the first instance. The Auditor's pursuit of the $14 million paid

3

to the Langston Firm, therefore, is not a collateral attack of the Settlement Order

implicating res judicata, estoppel or waiver.

For the reasons set forth below, the Court agrees with the Auditor that the dispute

between the parties is a non-core matter involving state law issues, the resolution of

which will have no impact on the Debtors or the bankruptcy case.  The Court will

therefore abstain from the Adversary Proceeding.

Jurisdiction and Abstention:

28 U.S.C. §1334 defines the subject matter of the district courts, and thus

bankruptcy courts, with respect to the exercise of their bankruptcy jurisdiction.  Under

§1334(b), a district court, and thus a bankruptcy court, may exercise three types of

jurisdiction: "arising under," "arising in," or "related to."  Actions that "arise under" title

11 involve claims "predicated on a right created by a provision of title 11."  *Drexel*

*Burnham Lambert Group, Inc. v. Vigilant Ins. Co.,* 130 B.R. 405, 407 (S.D.N.Y. 1991)

*quoting In re Chargit, Inc.,* 81 B.R. 243, 247 (Bankr. S.D.N.Y. 1987).  Actions that "arise

in" a case under title 11 encompass administrative matters that arise only in bankruptcy

cases and would have no existence outside of the bankruptcy.  *Id*.  "Related to"

jurisdiction has been defined as follows.  "[A] civil proceeding is related to bankruptcy

[if] . . . the outcome of that proceeding could conceivably have any effect on the estate

being administered in bankruptcy."  *Weisman v. Southeast Hotel Props. Ltd. P'ship.* 1992

WL 131080, at *3 (S.D.N.Y. 1992) *quoting Pacor, Inc. v. Higgens,* 743 F.2d 984 (3d Cir.

1984).  Actions "arising under" title 11 or "arising in" title 11 cases are "generally

considered 'core' proceedings while actions that merely 'relate to' cases under title 11 are

generally 'non-core' proceedings." *Drexel* at 409, n.2.

28 U.S.C. § 1334(c) sets forth two forms of statutory abstention with respect to

the district court's (and thus bankruptcy court's) exercise of bankruptcy jurisdiction:

discretionary abstention and mandatory abstention:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or
in the interest of comity with State courts or respect for State law, from abstaining from
hearing a particular proceeding arising under title 11 or arising in or related to a case
under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or
State law cause of action, related to a case under title 11 but not arising under title 11 or
arising in a case under title 11, with respect to which an action could not have been
commenced in a court of the United States absent jurisdiction under this section, the
district court shall abstain from hearing such proceeding if an action is commenced, and
can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(1) and (2).

A party seeking mandatory abstention must prove: "(1) the motion to abstain was

timely; (2) the action is based on a state law claim; (3) the action is "related to" (non-

core) but not "arising in" a bankruptcy case or "arising under " the Bankruptcy Code

(core); (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is

commenced in state court; (6) that action can be "timely adjudicated in state court." *In re*

*WorldCom, Inc. Securities Litigation,* 293 B.R. 308, 331 (S.D.N.Y. 2003).

For permissive abstention to apply, courts weigh a variety of factors: "(1) the

effect or lack thereof on the efficient administration of the estate if the court recommends

abstention; (2) the extent to which state law issues predominate over bankruptcy issues;

(3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a

5

related proceeding commenced in state court or other non-bankruptcy court; (5) the

jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or

remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than

the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims

from core bankruptcy matters to allow judgments to be entered in state court with

enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the

likelihood that the commencement of the proceeding in a bankruptcy court involves

forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12)

the presence in the proceeding of non-debtor parties." *In re WorldCom,* 293 B.R. at 332.


The Court finds that all of the requirements for mandatory abstention are met in

this case. The Abstention Motion was timely filed. The issues raised in the Adversary

Proceeding are based upon state law claims. The Adversary Proceeding is not a "core

proceeding" over which the Court has jurisdiction because it involves issues that do not

"arise under" title 11 or "arise in" the bankruptcy case. "Core proceedings" enumerated

in 28 U.S.C. §157 include, among others, proceedings involving the administration of the

case, the allowance or disallowance of claims against the estate, the recovery of a

preference or fraudulent conveyance, a determination of dischargeability or the

confirmation of a plan. *See, e.g.*, 28 U.S.C. 157(b)(2)(A)-(P)). The Adversary

Proceeding does not fall under any of the enumerated proceedings nor is it based upon

any substantive right provided in the Bankruptcy Code. The claims exist independently

of the bankruptcy case and are based on state law.


Nor is there diversity between the parties and thus the dispute could not have been

commenced in federal court but for the "related to" jurisdiction under 28 U.S.C §1334.

Finally, the State Court Action has been commenced and there is no reason to believe it will not be timely adjudicated. All of the factors for mandatory abstention are therefore present in this case and the Abstention Motion is granted.

Even if mandatory abstention were not warranted, factors supporting permissive abstention weigh in favor of that relief here. There will be no effect on the efficient administration of the estate if the Court recommends abstention. The Debtors' cases are confirmed and their administration is largely complete. The issues between the parties involve state law, rather than bankruptcy law, issues. While state law regarding the payment of legal fees to the Langston Firm may not be complex, the application of such law is best considered by a Mississippi state court. The issues raised in the Adversary Proceeding are remote from and not related to the bankruptcy case. The parties are non-debtors. No claim is raised against the Debtors or implicates property of the estate. Resolution of the dispute does not require an interpretation of the Settlement Agreement or the Settlement Order and will not impact, in any way, the Debtors or the bankruptcy case.

The Debtors have fully complied with the payment provisions of the Settlement Agreement by making the payments referred to in subparagraphs 8(i) – (iii). The Debtors' liability to the State is concluded. The issue of whether those monies are ultimately required to be turned over to the State is not an issue over which the Court has jurisdiction. The appropriate allocation of such funds pursuant to state law concerns only the State and the Langston Firm. Resolution of that issue will have no bearing on the settlement of the Debtors' rights and obligations effectuated under the Settlement Agreement. The factors in favor of permissive abstention weigh heavily in favor of that

relief.  Even if mandatory abstention were not established, therefore, the Court would

abstain from hearing and determining the Adversary Proceeding.